Carl W. Hampe (DC Bar # 440475)
Daniel P. Pierce (DC Bar # 988836)
Fragomen, Del Rey, Bernsen & Loewy LLP
1101 15th St. NW Suite 700
Washington, DC  20005
Phone  (202) 223-5515      Fax  (202) 371-2898
champe@fragomen.com
dpierce@fragomen.com
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Fogo de Chão (Holdings), Inc.** | ) | |
| 14881 Quorum Drive, Suite 750 | ) | |
| Dallas, TX  75254 | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil No.** _____ |
| | ) | |
| **U.S. Department of Homeland Security** | ) | |
| Mail Stop 3650 | ) | |
| Washington, DC 20258 | ) | |
| | ) | |
| **Jeh Johnson, Secretary,** | ) | |
| **U.S. Department of Homeland Security** | ) | |
| Mail Stop 3650 | ) | |
| Washington, DC 20258 | ) | |
| | ) | |
| **U.S. Citizenship and Immigration Services** | ) | |
| 111 Massachusetts Ave. N.W. | ) | |
| Washington, DC 20529-2000 | ) | |
| | ) | |
| **León Rodríguez, Director,** | ) | |
| **U.S. Citizenship and Immigration Services** | ) | |
| 111 Massachusetts Ave. N.W. | ) | |
| Washington, DC 20529-2120 | ) | |
| | ) | |
| **Ronald Rosenberg, Director,** | ) | |
| **U.S. Citizenship and Immigration Services –** | ) | |
| **Administrative Appeals Office** | ) | |
| 20 Massachusetts Ave., N.W | ) | |
| Washington, DC  20529-2090 | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT FOR DECLARATORY AND MANDAMUS RELIEF

**INTRODUCTION**

1.      Plaintiff Fogo de Chão (Holdings), Inc. ("Fogo") files this complaint to enforce the opinion of the U.S. Court of Appeals for the District of Columbia Circuit. *Fogo de Chao (Holdings) Inc. v. U.S. Dep't of Homeland Security, et al.*, 769 F.3d 1127 (D.C. Cir. 2014) (the "DC Circuit Opinion"). Defendants United States Citizenship and Immigration Services ("USCIS") and its Administrative Appeals Office ("AAO") violated the DC Circuit Opinion when the AAO issued a ruling on June 12, 2015, that disregarded the Opinion's remand instructions and continued the course of improper agency adjudication that has infected this case since its inception in 2010.

2.      This case concerns Defendants' (collectively, the "Government") repeated denial of one of Fogo's "L-1B" visa petitions that would enable the intracompany transfer of one of Fogo's veteran Brazilian *gaucho* chefs (called *churrasqueiros*), Mr. Rones Gasparetto, from Fogo's restaurants in Brazil to the company's restaurants in the United States.  *Churrasqueiros* like Mr. Gasparetto are an essential part of Fogo's business model and of Fogo's ability to convey an authentic Brazilian *gaucho* culinary experience in its U.S. restaurants.

3.      Regrettably, this is Fogo's second action with respect to Mr. Gasparetto's L-1B petition in this Court.  In the first action, *Fogo de Chao (Holdings) Inc., v. U.S. Dep't of Homeland Security et al.*, No. 1:10-cv-01024-RBW, filed June 17, 2010, Fogo challenged the denial by USCIS of a number of Fogo's L-1B petitions on behalf of Brazilian *churrasqueiros*, one of whom was Mr. Gasparetto.  Pursuant to an agreement between Fogo and the Government, the litigation was stayed in March 2011 so that Fogo could submit two new L-1B petitions for adjudication by USCIS, one of which was on behalf of Mr. Gasparetto.   Judge Walton incorporated this agreement into his Order issued on March 28, 2011, under which USCIS's

Vermont Service Center would proceed with "adjudication of two reopened visa petitions," including the L-1B petition on behalf of Mr. Gasparetto.  The Vermont Service Center denied that petition on June 16, 2011.  Fogo appealed to the USCIS's Administrative Appeals Office, and the AAO denied Mr. Gasparetto's L-1B petition on October 3, 2011.

4.      Fogo and the Government then jointly filed to continue the litigation based on the adverse 2011 AAO decision ("AAO Decision #1") (*See* Ex. 1), and Judge Walton issued an order on October 17, 2011 to restart the litigation through the staggered filing of cross-motions by each party for summary judgment.  The various rounds of briefing were completed on May 25, 2012.  Over one year passed without a decision.  Fogo then filed a motion for preliminary injunction on July 24, 2013, and on August 9, 2013, the District Court granted the Governments' motion for summary judgment and denied Fogo's motion for summary judgment.  Fogo appealed to the U.S. Court of Appeals for the D.C. Circuit, the parties briefed the case, oral argument was heard on May 1, 2014, and the D.C. Circuit ruled in Fogo's favor and reversed and remanded the adverse AAO decision on October 21, 2014.  *Fogo de Chao (Holdings) Inc. v. U.S. Dep't of Homeland Security, et al.,* 769 F.3d 1127 (D.C. Cir. 2014).

5.      The D.C. Circuit held that: (i) the key factual basis for the visa denial in AAO Decision #1 – Mr. Gasparetto's alleged failure to complete Fogo's training program – was not supported by substantial evidence; (ii) the other factual issues discussed in AAO Decision #1 were not dispositive to its denial determination; (iii) the AAO erred as a matter of law by excluding Fogo's evidence of Mr. Gasparetto's "cultural knowledge" of his upbringing in the gaucho culinary traditions; and (iv) the AAO erred as a matter of law by failing to consider Fogo's evidence that its inability to bring Mr. Gasparetto to the United States to apply his knowledge of gaucho culinary traditions at Fogo's U.S. restaurants would cause "economic inconvenience" to

Fogo – a material factor in USCIS's guidelines for how a petitioning company may establish the "specialized knowledge" that is central to the L-1B visa category.   The DC Circuit Opinion reversed the District Court's granting of summary judgment to the Government, AAO Decision #1 was vacated and reversed, and Fogo's L-1B petition on behalf of Mr. Gasparetto was remanded to USCIS for further proceedings consistent with the D.C. Circuit opinion.   The D.C. Circuit mandate issued to the Clerk of this Court on December 15, 2014, and on January 21, 2015, this Court issued an Order vacating the AAO decision and remanding the case to the Department of Homeland Security for "further proceedings consistent with the District of Columbia Circuit's October 21, 2014 Opinion."

6.      USCIS determined on January 23, 2015, that compliance with the DC Circuit Opinion could be accomplished by reopening Fogo's L-1B petition on behalf of Mr. Gasparetto before the AAO.   *See* Ex. 2 (Jan. 23, 2015 Notice from USCIS).   On or about this date, the Government agreed with Fogo (through counsel) that the AAO would make best efforts to issue its decision on remand within 90 days of receipt of a brief from Fogo.

7.      Fogo filed a brief with the AAO on February 23, 2015, in which it identified numerous factual findings or legal determinations by which the D.C. Circuit Opinion either preempted the AAO's discretion on remand, or put significant boundaries on such discretion.   Among the factual issues Fogo identified in its brief was the D.C. Circuit's citation of the Affidavit of Fogo CEO Lawrence Johnson, s*ee* Ex. 3 ("Johnson Affidavit"), as "explaining that the company thus far has been unable to teach non-Brazilian employees to successfully execute all of those skills" that Fogo's Brazilian L-1B candidates, such as Mr. Gasparetto, are able to perform.   769 F.3d at 1134.

8.      On June 12, 2015, 108 days after Fogo's submission of its brief, the AAO again denied

Fogo's L-1B petition on behalf of Mr. Gasparetto ("AAO Decision #2").  A principal reason the

AAO gave for its second rejection of the L-1B petition was its contention that the Johnson

Affidavit was not credible evidence because Fogo's initial L-1B petition (denied by USCIS's

Vermont Service Center prior to the parties' March 2011 agreement to reopen the case) never

argued that Fogo's Brazilian churrasqueiros had knowledge and skills that its U.S. hires did not.

Ex. 4 (June 12, 2015 AAO Op.) at 13-16.  In reaching this conclusion, the AAO:  (i) did not

explain why it had never argued this point previously; (ii) disregarded the D.C. Circuit's

statement that the Johnson Affidavit established Fogo's inability to train US workers to perform

the essential churrasqueiro functions; 769 F.3d at 1142-43; and (iii) misquoted Fogo's expert

opinion from Gerald Hornbeck (submitted in both rounds of petitioning) for the proposition that

Fogo's U.S. churrasqueiros and its Brazilian churrasqueiros were equivalent, when in in fact Mr.

Hornbeck distinguished the authentic gaucho culinary skills of Fogo's Brazilian churrasqueiros

from U.S. workers attempting to perform the same function.  Ex. 5 (Fogo letter supporting

Gasparetto Petition, with expert opinion attachments only).

9.      AAO Decision #2 thus ran afoul of the DC Circuit Opinion in at least four ways.  First,

the AAO improperly concluded that Fogo's competitor's chefs perform the same duty as Fogo's

*churrasqueiros*.  There is no evidence in the record—much less substantial evidence—to support

this holding.  And in any case, the DC Circuit Opinion explicitly rejected this resurrection of the

so-called "labor market" test on which the AAO previously relied.

10.     Second, the AAO held that Mr. Gasparetto would perform all of the same functions as

Fogo's U.S.-born *churrasqueiros*.  There is no evidence in the record—much less substantial

evidence—to support this holding.  Indeed, the only direct evidence on this point, a declaration

from Fogo's CEO, explicitly said that Brazilian-born *churrasqueiros* perform different duties from U.S.-born *churrasqueiros*.  Other evidence in the record also implies that U.S.-born hires cannot perform all of the required functions for Brazilian *churrasqueiros*.

11.     Third, the AAO's opinion contends that Mr. Gasparetto did not complete Fogo's training program for its Brazilian *churrasqueiros*.  That finding flatly disregards the DC Circuit's Opinion, which held that no substantial evidence supports the AAO's contention that Mr. Gasparetto did not complete the program.

12.     Fourth, the AAO's opinion contends that Mr. Gasparetto did not act as a *churrasqueiro* in the year before the petition was filed.  Again there is no evidence—much less substantial evidence—supporting that conclusion.  The AAO relies solely on a discrepancy in Mr. Gasparetto's job *title*, which it argues suggests that he was a waiter.  All of the other evidence supports Fogo's contention that Mr. Gasparetto in fact performed the same duties as a *churrasqueiro*.  Moreover, the DC Circuit Opinion made clear that the Government did not rely on this point as dispositive in previously denying the petition.  The AAO does not get a "do-over" on this point.

13.     USCIS, through its June 12, 2015 AAO decision, has established its disregard for the instructions of the D.C. Circuit, its inability to abide by the substantial evidence rule, and its intention to continue denying approvable L-1B petitions filed by Fogo unless this Court rejects its lawless behavior.

14.     For these reasons, Fogo respectfully requests that this Court either direct the agency to grant the Gasparetto L-1B petition, or approve the L-1B petition itself.

## PARTIES

15.     Fogo de Chão (Holdings), Inc. is a Delaware corporation, headquartered in Dallas, Texas. It was formerly Fogo de Chão Churrascaria (Holdings) LLC, a Delaware limited liability company.

16.     The U.S. Department of Homeland Security is the federal agency bearing responsibility for administration and enforcement of the nation's immigration laws.

17.     Defendant Jeh Johnson is sued in his official capacity as Secretary of the U.S. Department of Homeland Security, in which he is charged with the just administration and enforcement of the immigration laws.  8 U.S.C. § 1103(a).

18.     U.S. Citizenship and Immigration Services, a bureau of the U.S. Department of Homeland Security, is responsible for awarding visa petitions in appropriate circumstances consistent with the INA, and includes its Administrative Appeals Office, which has denied Fogo's petition on behalf of Mr. Gasparetto.  See *infra*, ¶¶ 70-83.  As used below, "USCIS" refers to both the U.S. Citizenship and Immigration Services, and predecessor agency U.S. Immigration and Naturalization Services.

19.     Defendant León Rodríguez is sued in his official capacity as Director of USCIS.

20.     Defendant Ronald Rosenberg is sued in his official capacity as Director of the Administrative Appeals Office of USCIS, which denied Fogo's L-1B visa petition on behalf of Mr. Gasparetto on June 12, 2015.

## JURISDICTION AND VENUE

21.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.  See *Califano v. Sanders*, 430 U.S. 99, 105 (1977) (except where statutes preclude review, 28 U.S.C. § 1331

"confer[s] jurisdiction on federal courts to review agency action"). See also, 5 U.S.C. § 702; 28 U.S.C. § 1361; 28 U.S.C. §§ 2201–2202.

22. Because Defendants' decision on a petition for L-1B visa status is not discretionary, neither the immigration laws (*see*, *e.g.*, 8 U.S.C. § 1252(a)(2)(B)(ii)) nor the APA withdraws jurisdiction. See, e.g., *Spencer Enterprises, Inc. et al v. United States*, 345 F.3d 683 (9th Cir. 2003).

23. In the previous litigation between the parties, the D.C. Circuit ruled that this Court's jurisdiction over the AAO's previous denial of the Gasparetto petition was proper under 28 U.S.C. § 1331 and that there was no statutory grant of discretionary authority over L-1B petitions that would result in a withdrawal of jurisdiction under 8 U.S.C. § 1252(a)(2)(B)(ii). *See Fogo de Chao (Holdings) Inc. v. U.S. Dept. of Homeland Security*, 769 F.3d 1127, 1138-39 (2014).

24. Venue properly lies in this judicial district under 28 U.S.C. § 1391(e), in that Defendants are agencies and officers of agencies of the United States, and Defendants Jeh Johnson, Léon Rodriguez, and Ronald Rosenberg, sued in their official capacity as Secretary of the U.S. Department of Homeland Security, Director of USCIS and Director of the AAO, respectively, reside in this judicial district. *See* Wright, Miller, & Cooper; Federal Practice and Procedure; Jurisdiction 3d § 3815 ("Under Section 1391(e)(1) a suit may be brought in any district in which a defendant in the action resides. It is well-settled that the official residence of the agency, officer, or employee, rather than the personal residence of the individual being sued, will continue to control in applying this provision.") (citing, *e.g.*, *Williams v. U.S*., No. 01-0024, 2001 WL 1352885, at *1 (N.D. Cal. Oct. 23, 2001) ("For purposes of venue, all federal defendants reside in Washington, D.C.")).

## FACTS

### Fogo Conveys an Authentic Gaucho Experience

25.     Fogo is *the* top-of-the-market Brazilian steakhouse (known as a "*churrascaria*") in the United States.  Founded in 1979 in Brazil, Fogo owns and operates through its subsidiaries authentic, upscale *churrascarias* in ten locations in Brazil, one location in Mexico, and 26 cities throughout the U.S.—including one in Washington, DC.

26.     Fogo authentically conveys the gaucho lifestyle, principally through *churrasco*, the traditional Brazilian gaucho way of cooking, presenting, and serving meat, which originated in the rural pampas region of Rio Grande do Sul in Southern Brazil.  Fogo began in 1979 by providing this authentic rural Brazilian experience to urban customers in Porto Alegre, Brazil.  It later expanded to other large cities, including Sao Paulo, Brazil.  Fogo entered the U.S. market in Dallas, Texas in 1997.

27.     Fogo remains authentic by endeavoring to employ, at each U.S. restaurant, three to five genuine Brazilian gaucho chefs (known as *churrasqueiros*), who grew up on the rural Southern Brazilian pampas, where gaucho traditions and *churrasco* originate*.*  These Brazilian *churrasqueiros* train the locally hired American *churrasqueiros,* and make possible the 70-90 jobs provided to U.S. workers at each Fogo restaurant.

28.     Fogo strictly limits its hiring of *churrasqueiros* in Brazil to genuine gauchos from the rural Brazilian pampas who grew up with the *churrascaria* cooking style.  At Fogo's restaurants, these *churrasqueiros* are able to authentically convey the gaucho experience, in part because they acquired this skill from their fathers, who acquired it from theirs, while living on the Brazilian pampas.

29.     At Fogo's restaurants, the *churrasqueiros* leave their positions at the fire to circulate throughout each table in the dining room, offering to carve skewered meats and answering questions about gaucho life and *churrasco,* in a manner that restaurant industry expert Gerald Hornbeck likened to "choreography."   In this manner, Fogo recreates for its patrons the ambience of hospitality at a gracious Brazilian ranch (or "*estancia*") in the 19th Century upon the celebration of a special occasion.

30.     Fogo's ability to authentically convey the gaucho culture through *churrasco* distinguishes Fogo from competing *churrascarias* and places it at the top of the market.  **Fogo's average dinner tab in the United States is $70 per person**, and each restaurant generates $6-$14 million in annual revenue.  Fogo is a highly respected and widely recognized multinational company with aggregate annual global revenues in 2014 of approximately $262 million, of which approximately $199 million originated from its U.S. restaurants.

31.     These exceptional economic results can be achieved at a U.S. Fogo restaurant with the admission into this country of as few as three to five authentic Brazilian gauchos.

### Fogo Uses Brazilian *Churrasqueiros* to Train U.S. Local-Hire *Churrasqueiros*

32.     In the United States alone, Fogo employed 1,827 people as of March 29, 2015.  The vast majority of these were U.S. workers.  **Only 185 were Brazilian foreign nationals**—but these Brazilian employees are critical because they train the locally-hired American *churrasqueiros* at each U.S. restaurant and ensure that each restaurant conveys the authentic gaucho experience to its U.S. patrons.  Fogo demonstrated through expert opinion in its visa applications that its competitive advantage in the United States was based on the authenticity of the gaucho culinary experience that it conveyed to its customers.  The Brazilian *churrasqueiros* have grown up in the

rural Brazilian pampas, have extensive experience with the gaucho culture, and have at least two years experience as *churrasqueiros* at Fogo's restaurants in Brazil.

33.     To bring these veteran *churrasqueiros* to its U.S. restaurants, Fogo petitions the USCIS for "specialized knowledge" nonimmigrant intracompany transferee L-1B visas.  The L-1B visa is the means by which multinational businesses—like Fogo—temporarily transfer foreign employees to their American operations.

34.     Pursuant to 8 U.S.C. § 1101(a)(15)(L), an applicant qualifies for an L-1B, if

> within 3 years preceding the time of his application for admission into the United States, [he] has been employed continuously for one year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and [he] seeks to enter the United States temporarily in order to continue to render his services to the same employer or a subsidiary or affiliate thereof ***in a capacity that*** is managerial, executive, or ***involves specialized knowledge*** . . . . (emphasis added).

The INA does not define "specialized knowledge," but the USCIS has promulgated a regulation stating: "Specialized knowledge means special knowledge possessed by an individual of the petitioning organization's product, service, research, equipment, techniques, management, or other interests and its application in international markets, or an advanced level of knowledge or expertise in the organization's processes and procedures."  8 C.F.R. 214.2(l)(1)(ii)(D).

35.     Since Fogo established its first U.S. restaurant eighteen years ago, USCIS has approved—at each of its four regional Service Centers—116 of these "specialized knowledge" L-1B petitions exclusively for the intracompany transfer of veteran Brazilian *churrasqueiros,* along with 135 L-1B extensions, each of which requires a separate petition to USCIS, for  a total of 251 L-1B petition approvals.  In each of these petitions, Fogo satisfied the "specialized knowledge" requirement by supplying documentary evidence of how both the nature of the position of *churrasqueiro* within the Fogo business strategy, as well as each individual

*churrasqueiro*, satisfied the statutory and regulatory requirements.   In summary, the factual submission by Fogo that satisfies the "specialized knowledge" definition included:

- Extensive company documentation of the critical position that Brazilian churrasqueiros play in the company's ability to convey an authentic gaucho culinary experience, along with the significant knowledge, experience, skills and training possessed by each L-1B beneficiary (such as Mr. Gasparetto) to satisfy this company requirement that enables it to compete in the United States;

- A description of the "special knowledge" held by Fogo's *churrasqueiros* of authentic Brazilian gaucho culture—a key aspect of Fogo's success in "international markets" such as the United States, supported in part by an affidavit from Brazilian cultural historian Paixo Cortes, who describes the unique aspects of gaucho culture in rural southern Brazil, how *churrasco* epitomizes these gaucho traditions, and how Fogo authentically conveys this aspect of gaucho culture in its restaurants;

- An expert opinion from U.S. restaurant industry expert Gerry Hornbeck, confirming that the unique backgrounds of Fogo's Brazilian *churrasqueiros*, their subsequent specialized training in Fogo's Brazilian restaurants, and their execution of Fogo's business model in the United States, is directly responsible for Fogo's top-of-the-market economic results, creating customer loyalty in light of $70/person average dinner bills;

- Further expert analysis from U.S. restaurant industry expert Gerry Hornbeck clarifying that Fogo's *churrasqueiros* are not simply "cooks," nor are they simply costumed "waiters," but rather most analogous to "choreographers" of a

traditional Brazilian culinary ritual that requires training and experience that are "superior to any workers currently available in the American restaurant industry," Ex. 5 at C17 – C25; and

- An additional expert opinion from a former instructor at the Culinary Institute of America (Gregory Fatigati):  (i) attesting to the "special knowledge" that Fogo *churrasqueiros* possess based on their experience and then training at Fogo's Brazilian restaurants of how to prepare, carve and serve meat, and (ii) confirming that these techniques are not generally known or utilized in the United States and that there is no U.S. culinary school or training program that could impart these skills to U.S. workers.  Ex. 5 at C26 – C30.

36.    With those L-1B visa approvals, Fogo has been able to expand its business into new U.S. cities—which is critical to creating opportunities and incentives for existing employees, and vital to the company's economic success.   It requires the transfer of ***only three to five*** veteran *churrasqueiros* from Fogo's Brazilian restaurants to open a new U.S. restaurant.  ***And each Fogo restaurant in the U.S. directly creates 70-90 U.S. worker jobs***.  Conversely, the fate of the 70-90 American jobs at each existing Fogo restaurant essentially depends upon those core *churrasqueiro* positions.

**The Government Begins Revoking, Delaying and then Denying Fogo's L-1B Petitions**

37.    In October and November 2006, Fogo submitted—and Defendants approved—L-1B petitions on behalf of seven *churrasqueiros*.  On October 25, 2007, the Vermont Service Center filed a Notice of Intent to Revoke ("NOIR"), and in March 2008, did in fact revoke, each of these petitions—before any of these *churrasqueiros* had even left Brazil.

38.     In response to these revocations, Fogo attempted to utilize USCIS's administrative remedy.  On April 22, 2008, Fogo filed an appeal with the Administrative Appeals Office for each of these cases.  The AAO took no action in those cases for 26 months.  Because there is no work authorization during the pendency of an administrative review of an L-1B petition, none of these *churrasqueiros* was able to come to work in Fogo's U.S. restaurants.  Rather than endure this seemingly endless wait, these seven *churrasqueiros* (voluntarily) left Fogo's employ to seek other opportunities in Brazil.

39.     After USCIS began applying the reasoning of an Administrative Appeals Office decision to its adjudication of L-1B petitions in July 2008 (*see* Administrative Appeals Office decision in *Matter of GST*, File No. WAC 07-277 53214), Fogo petitioned for—and the Government approved—a number of new L-1B visas for its *churrasqueiros*.  For example, in the first five months of 2010, Defendants approved ten new Fogo petitions (seven for new positions, three for extensions of previously approved petitions).  Fogo made a detailed presentation addressing each of the "specialized knowledge" factors described in ¶ 34, supporting each by substantial evidence (including expert opinion), and USCIS presumably approved these petitions based on Fogo's detailed submissions.

40.     On February 4, 2010, Fogo filed a petition to the Vermont Service Center on behalf of Mr. Rones Gasparetto—a *churrasqueiro* at working at Fogo's Brazilian restaurants for more than two years—for transfer to Fogo's Washington, DC restaurant ("Gasparetto Petition #1").  *See* Ex. 5.  Mr. Gasparetto—like virtually all other Fogo *churrasqueiros* in Brazil—was raised in the rural Brazilian pampas and began learning gaucho and *churrasco* traditions as a very young man.

41.     Fogo provided extensive documentary evidence for Gasparetto Petition #1, including expert opinions by:  (i) an expert on the Brazilian gaucho and *churrasco* tradition, (ii) a former

instructor at the Culinary Institute of America, Gregory Fatigati, who stated that U.S. cooking schools do not train in the preparation, carving and serving techniques required by Fogo of its churrasqueiros, and (iii) a U.S. restaurant industry analyst, Gerald Hornbeck, who stated that "Fogo de Chao's Brazilian born, trained and experienced churrasqueiro chefs are unique and are superior to any workers currently available in the American restaurant industry, and possess skills that are not trained by the U.S. restaurant industry or specialized restaurant and culinary schools." *See* Ex. 5 (Fogo letter supporting Gasparetto Petition, with expert opinion attachments only).   Upon its first review of the petition filed on behalf of Mr. Gasparetto, the Vermont Service Center failed even to address this evidence.   Rather, it requested additional evidence through a Request for Evidence ("RFE") on February 9, 2010.  *See* Ex. 6.

42.     Fogo responded with a ***nineteen-page*** explanation of how Gasparetto Petition #1 established Mr. Gasparetto's employment in a "specialized knowledge" capacity.   Fogo's response included quoted excerpts from the relevant restaurant industry experts whose opinions were included in the initial petition.  Fogo's RFE response quoted the Hornbeck expert opinion as follows:  "A U.S. Fogo de Chao churrascaria restaurant ideally should be staffed by at least 40-50% (8-10 per restaurant) veteran, Brazilian churrasqueiros chefs from southern rural Brazilian states to ensure that it has a sufficient number of authentic gauchos to train the remaining locally-hired staff."  Its response then explicitly noted:  "in order for Fogo de Chao to remain competitive, a minimum number of Churrasqueiro Chefs from Brazil must be present at each location, including this one."  *See* Ex. 7 (without attachments).

43.     Yet the Government inexplicably denied Gasparetto Petition #1 on May 20, 2010.  This decision made no attempt to square the denial with any of the more than 250 preceding

approvals—including the ten petitions that the Vermont Service Center had approved in the five months before.[1]

44.     Upon receiving the denial decision, counsel for Fogo contacted the Vermont Service Center on May 20, 2010, to request review of the denial decision.  The Vermont Service Center responded on the next day that a supervisor had reviewed the file, and that the denial stands.  On June 21, 2010, Fogo filed with the Vermont Service Center a motion to reconsider the denial of the Gasparetto petition.  (This motion was later withdrawn based on an agreement between Fogo and the Government to reopen the Gasparetto L-1B petition.)

45.     Promptly after denying Gasparetto Petition #1, the Vermont Service Center proceeded to issue Notices of Intent to Revoke ("NOIRs"), on May 21 and 27, 2010, with respect to ten L-1B holders who were at the time working at Fogo's U.S. restaurants as *churrasqueiros*.  Fogo contested nine of those NOIRs in June 2010, pointing out that the Government's NOIRs failed to show that it committed any error whatsoever in the initial approvals, let alone the "gross error" that the agency must establish before it may revoke a petition.  *See* 8 C.F.R. 214.2(*l*)(9)(iii). Because no work authorization under the L-1B visa is permitted during the pendency of an administrative appeal of any revocation decision, Fogo immediately stood to lose its right to employ these *churrasqueiros* in its U.S. restaurants upon revocation.

**Fogo Files Suit in this Court and the AAO (Finally) Reaches a Decision**

46.     Fogo filed suit in this Court in June 2010.  That case's docket number was 1:10-cv-01024-RBW and is referred to herein as the "first District Court case."  In the first District Court

---

[1]  Fogo's L-1B petitions which the Government has denied or revoked are materially the same as those petitions which the Government previously approved in the vast number of cases.  Because Fogo has applied for L-1B visas solely for its *churrasqueiros*—which, given Fogo's strict hiring criteria for that position—all share a similar personal background, the factual basis underlying these petitions is the same in all material respects.  While the statutory and regulatory standard has remained unchanged, Fogo's legal arguments have evolved in response to the applicable administrative case law.  For purposes of the APA, these differences are not material.

case, Fogo asked this Court to require the AAO to decide the L-1B petitions that had been pending for over two years and to grant those petitions, including the Gasparetto petition.

47.     In March 2011, Fogo and the Government agreed to stay the first District Court case to allow the Vermont Service Center ("VSC") to reopen and adjudicate the Gasparetto petition. The parties agreed to the desirability of: (i) a more complete administrative record—including a ruling by the AAO, if necessary, and (ii) imposition of time deadlines on the notoriously slow AAO review process.

48.     On March 28, 2011, this Court issued a minute order in the first District Court case staying Fogo's case "pending the Vermont Service Center's adjudication of two reopened visa petitions" and requiring the parties to "file a status report with the Court after the decision of the Vermont Service Center."

49.     Pursuant to the parties' agreement and this Court's order, the VSC reopened the Gasparetto petition.

50.     The regulations at 8 C.F.R. § 103.5 allow a party to submit new evidence when a petition is reopened.  Both Fogo and the Government agreed as part of the negotiations regarding the reopening of the Gasparetto case that Fogo would have the opportunity to submit further evidence in its reopened submission to the VSC to address some of the Government's concerns with Fogo's L-1B petitions.

51.     Consistent with this Court's order, the parties' understanding, and the relevant regulations, Fogo submitted a new petition, brief and accompanying exhibits to the VSC in the reopened adjudication of Fogo's L-1B submission on behalf of Mr. Gasparetto (collectively, "Gasparetto Petition #2").

52.     Among the exhibits submitted with Gasparetto Petition #2 to the VSC was an affidavit from Fogo's CEO, Larry Johnson, which addressed many of the principal issues that the VSC had raised in its initial request for evidence regarding Gasparetto Petition #1 and in its denials of Fogo's other L-1B petitions.   Ex. 3 (Johnson Aff.).   The Johnson Affidavit described the 17 duties of the Brazilian *churrasqueiro* position and identified which of those duties that Fogo could not train U.S. hires to meet according to Fogo's standards -- either in a reasonable time or at all.   The Hornbeck Expert Opinion was also included in Gasparetto Petition #2, as its observations about the distinguishing features of Fogo's Brazilian churrasqueiros complimented the Johnson Affidavit's analysis of the 17 precise skills required of that position that are only possessed in totality by its Brazilian churrasqueiros.

53.     On June 16, 2011, the Vermont Service Center denied Gasparetto Petition #2 and referred the matter to the AAO.   The AAO affirmed the VSC's denial on October 3, 2011.   *See* Ex. 1.

54.     At no point in either the VSC's June 2011 opinion or the AAO's October 2011 opinion did USCIS indicate that Fogo's submission of new evidence in Gasparetto Petition #2 was inappropriate or that the newly submitted evidence was deserving of lesser weight because of either the timing of its submission or a lack of consistency between the initial submission and the reopening submission.

55.     After the AAO upheld the VSC's denial of Gasparetto Petition #2, the parties resumed litigation in the first District Court case in late 2011, pursuant to this Court's order and the parties' agreement.

56.     Fogo and the Government filed summary judgment motions in early 2012 in the first District Court case.   At no point in the first District Court case did the Government suggest in its briefing that it was inappropriate for Fogo to submit additional evidence when the Gasparetto

petition was reopened, nor did it argue that the evidence in the reopened submission was inconsistent with evidence in the initial submission.

57.    The District Court denied Fogo's summary judgment motion and granted summary judgment in favor of the Government.  *See Fogo de Chao Churrascaria, LLC v. U.S. Dept. of Homeland Security*, 959 F. Supp. 2d 32 (D.D.C. 2013).

### Fogo Prevails in the D.C. Circuit

58.    Fogo then appealed the case to the United States Court of Appeals for the District of Columbia (the "Circuit Court").  On October 21, 2014, that Court remanded to this Court "with instructions to vacate the Appeals Office's decision and to remand to the agency for further proceedings consistent with [its] opinion."  *See Fogo de Chao (Holdings) Inc. v. United States Dept. of Homeland Sec.*, 769 F.3d 1127, 1152 (D.C. Cir. 2014).

59.    In its opinion, the Circuit Court concluded that the Agency's interpretation of "specialized knowledge" was not entitled to deference because the agency's "'specialized knowledge' regulation largely parrots, rather than interprets, the key statutory language" and because the AAO's interpretation of the statutory language occurred in a "non-precedential ruling."  *Id.* at 1136.

60.    The Circuit Court rejected the AAO's determination that "'specialized knowledge' would woodenly debar any and all knowledge acquired through one's cultural traditions, upbringing, or 'life experience.'"  *Id.* at 1139.

61.    The Circuit Court concluded that "nothing in the [L-1B] statute itself textually excludes all culturally acquired knowledge as a form of 'specialized knowledge'" and that cultural knowledge "fit naturally" within the agency's previous memorandum on the topic.  *Id.* at 1139-40.

62.    The Circuit Court determined that the AAO "failed to ground its newly adopted, categorical exclusion of cultural knowledge in statutory text, statutory purpose, regulatory guidance, or reasoned analysis" and that the judgement thus failed "the requirement of reasoned decisionmaking under arbitrary and capricious review as well." *Id.* at 1141.

63.    The Circuit Court held that Fogo "presented evidence to the Service showing that each of its *churrasqueiros* went through an 18- to 24- month training period, and that even after that training period, its non-Brazilian *churrasqueiros* still were not performing a majority of the duties of the position Fogo de Chao requires." *Id.* at 1142.  The Circuit Court held that "Fogo de Chao's assertion that such evidence should be considered has substantial force." *Id.*

64.    The Circuit Court rejected the AAO's conclusion that there was "insufficient evidence of Gasparetto's completion of the company's internal 18- to 24-month *churrasqueiros* training program," stating flatly that "this conclusion is not supported by substantial evidence," and calling the AAO's reasoning on the point "hard to understand." *Id.* at 1146.

65.    The Circuit Court described with approval the substantial evidence that Fogo submitted in Mr. Gasparetto's petition including "several expert reports discussing (i) the distinguishing features of Fogo de Chao's business model and training program, (ii) the *churrasco* method and the region of Brazil from which it is drawn, and (iii) the distinct skills required of the company's *churrasqueiro* chefs." *Id.* at 1133.

66.    The Circuit Court rejected any suggestion of an evidentiary deficiency regarding whether Mr. Gasparetto had worked a sufficient amount of time as a churrasqueiro to qualify as a multinational transferee: "The record nonetheless does indicate that, while the company hires people whose preexisting skills and knowledge allow them to perform the *churrasqueiro* chef duties, the training remains necessary to some extent to instruct those chefs in how to apply their

knowledge in Fogo de Chao's business in international markets.   There thus is no apparent inconsistency in Gasparetto's duties or title remaining the same while he completed his training." *Id.* at 1147.

67.     The Circuit Court further held that any alleged discrepancies in Mr. Gasparetto's job titles was "of no moment because neither the Appeals Office decision nor the Department on appeal identifies that concern as an independently sufficient basis for the denial of Gasparetto's visa." *Id.* at 1147.

68.     The Circuit Court remanded the matter to this Court with instructions "to vacate the Appeals Office's decision and to remand to the agency for further proceedings consistent with" its opinion. *Id.* at 1152.

69.     On January 21, 2015, this Court issued an order remanding the Gasparetto petition to the AAO for proceedings consistent with the DC Circuit Opinion.

### The AAO Issues a Ruling in Contravention of the Circuit Court's Opinion

70.     On June 12, 2015, the AAO again denied the Gasparetto petition.  *See* Exhibit 4 (June 12, 2015 AAO Op. ("AAO Decision #2")).   That decision is not supported by substantial evidence, reaches conclusions in a manner that is arbitrary and capricious, and flies in the face of the DC Circuit Opinion in several respects.

71.     In summary, AAO Decision #2 claims that the arguments and evidence contained in Gasparetto Petition #2 "create a tension with the initially presented evidence" in Gasparetto Petition #1, and thus evidence in Gasparetto Petition #2 is not reliable.  AAO Decision #2 only stitches together such an argument, however, by mischaracterizing the evidence Fogo submitted in Gasparetto Petition #1.

72.     **First**, the AAO misreads the administrative record of Gasparetto Petition #1 and asserts that it does not contain evidence of "how the duties the alien performed abroad and those he will perform in the Untied States are different or unique from those of other workers employed by the petitioner or other U.S. employees in this type of position." Ex. 4 at 13. It only does so by: (i) misquoting counsel to Fogo's response to the VSC's Request for Evidence in Gasparetto Petition #1; and (ii) claiming that the Hornbeck Opinion equates Fogo's Brazilian churrasqueiros with its U.S. hires and U.S. churrascaria workers, Ex. 4 at 13-15, which that opinion did not. From this incorrect factual predicate regarding the evidence in Gasparetto Petition #1, the AAO then argues that Fogo's evidence of specialized knowledge in Gasparetto Petition #2 is unreliable. This line of argument in AAO Decision #2 is pure subterfuge.

73.     Rather, Fogo's evidence submitted in Gasparetto Petition #1 established the skills: (i) possessed by Mr. Gasparetto and Fogo's Brazilian churrasqueiros in general, that (ii) Fogo's U.S. workers, and U.S. churrascaria workers in general, do not possess. A.R. 344-45. Indeed, the Hornbeck Expert Opinion submitted in support of Gasparetto Petition #1 included the following statement: "Brazilian born, trained and experienced churrasqueiro chefs are a prerequisite to train *and perpetuate* the necessary and physical and intuitive skills to current and future locally hired churrasqueiro chef staff." Ex. 5 at C25 (emphasis added). The assertion in AAO Decision #2 that "petitioner did not initially differentiate its locally-hired chefs from its Brazilian-born chefs in terms of their job titles, their salaries, the duties they perform, or their relative knowledge and skills," Ex. 4 at 12, is contrary to the substantial evidence in the Record.

74.     Critically, this fundamental argument of AAO Decision #2 is contrary to the D.C. Circuit Opinion, which found that there was "*uncontroverted evidence* in the record that Gasparetto gained the knowledge, skill levels, and judgments specifically relevant to his duties at Fogo de

Chao in material part through experience gained growing up in the south of Brazil and participating frequently in the *churrasco* tradition." *Fogo de Chao (Holdings), Inc. v. U.S. Dept. of Homeland Sec.*, 769 F.3d 1127, 1140 (D.C. Cir. 2014) (emphasis added). "Uncontroverted evidence" means precisely that. AAO Decision #2 attempts to "recontrovert" this evidence, in outright defiance of the D.C. Circuit Opinion.

75.     The D.C. Circuit Opinion held that it was reversible error for Defendants' in AAO Decision #1 to refuse to consider Fogo's evidence of "cultural knowledge" to satisfy the statutory "specialized knowledge." 769 F.3d at 1139 ("We hold that the agency has not offered a reasoned analysis of why the statutory phrase 'specialized knowledge' would woodenly debar any and all knowledge acquired through one's cultural traditions, upbringing, or 'life experience.'"). AAO Decision #2 confirms Defendants' course of conduct: they will misapply the rules and disregard "uncontroverted" evidence that otherwise satisfies the specialized knowledge standard in order to reject Fogo's approvable L-1B petitions.

76.     **<u>Second</u>**, AAO Decision #2 asserts that Fogo still has not submitted sufficient evidence to show that Mr. Gasparetto has completed the corporate training program. Ex. 4 at 21-23. It manages this argument only by misreading numerous affidavits and documents submitted by Fogo in Gasparetto Petition #2, ignoring the factual determinations of the D.C. Circuit Opinion, and pointing to no evidence in the Record to support its position.

77.     The AAO's stubborn insistence that Fogo failed to demonstrate that Mr. Gasparetto completed its training program is startling. Reviewing the same administrative record to which the AAO now returns, the D.C. Circuit not only concluded that the AAO's position "is not supported by substantial evidence," but observed further that: "Frankly, the Appeals office's reasoning on this point is hard to understand." 769 F.3d at 1146-47. The Circuit Court made

this observation because Fogo's "evidence of Gasparetto's completion of the training program went far beyond the 'assertions of counsel,' and even beyond the Chief Executive Officer's representations in the cover letter," 769 F.3d at 1147.   The D.C. Circuit Opinion stated: "Specifically, the **_uncontradicted_** evidence before the Appeals Office documenting Gasparetto's completed training included":  (i) the CEO Affidavit, (ii) the Gasparetto CV, and (iii) a letter from a Brazilian nutritionist having reviewed the relevant information.  *Id* (emphasis added).

78.     AAO Decision #2 addresses each of the three documents that the DC Circuit Opinion cites with approval and as "uncontradicted" – and tries to contradict them.  Ex. 4 at 22-23.  The D.C. Circuit Opinion's direct criticism of the reasoning in AAO Decision #1 is particularly resonant here:  "While the substantial-evidence standard is generous, it is not boundless; it does not allow an agency to close its eyes to on-point and uncontradicted record evidence without any explanation at all.   That is especially true here where at no time prior to reopening the administrative case had the service questioned the sufficiency of Fogo de Chao's proof on this matter or requested further evidence."  769 F.3d at 1147 (citation omitted).  The Circuit Court's remand to USCIS for proceedings "consistent with this opinion," and this Court's subsequent identical mandate to Defendants, are nowhere in sight.

79.     **Finally**, AAO Decision #2 contends that differing job titles for Mr. Gasparetto's position while working for Fogo as a churrasqueiro in Brazil cast doubt on whether he was working in a specialized knowledge capacity for one year prior to Fogo's visa petition on his behalf, as required by the L-1B visa category.  AAO Decision #2 states:  "The unresolved discrepancy created by the *garcon churras* job title is significant because the petitioner's claim to eligibility for this visa classification is predicated, in part, on the beneficiary's standing as a fully trained

*churrasqueiro* chef with one year of post-training experience in a position involving the claimed specialized knowledge." Ex. 4 at 21.

80.     This final argument is predicated on the AAO's interpretation of a translated job title, and does not consider the significant evidence submitted by Fogo showing that Mr. Gasparetto indeed worked as a *churrasqueiro* for over one year at a Fogo restaurant in Brazil, thus satisfying the statutory standard.  *See* Ex. 5 at C4.   AAO Decision #2 on this point again ignores the explicit words of the D.C. Circuit Opinion:  "The record nonetheless does indicate that, while the company hires people whose preexisting skills and knowledge allow them to perform the churrasqueiro chef duties, the training remains necessary to some extent to instruct those chefs in how to apply their knowledge in Fogo de Chao's business in international markets. There thus is no apparent inconsistency in Gasparetto's duties or title remaining the same while he completed his training.  In any event, regardless of whether the inconsistency in Gasparetto's duties and title that the Appeals Office perceived is borne out by the record, that gap appears to be of no moment because neither the Appeals Office decision nor the Department on appeal identifies that concern as an independently sufficient basis for the denial of Gasparetto's visa."  769 F.3d at 1147.

81.     So too in AAO Decision #2.  The latest denial decision never contends that the job title issue would be dispositive if every other issue were resolved in favor of Fogo.  *See* Ex. 4 at 21. As such, this is simply another instance in which the AAO disregarded the D.C. Circuit Opinion and came up with no new evidence or persuasive argument.

82.     AAO Decision #2 openly contradicts factual determinations of the D.C. Circuit Opinion, relies on a mischaracterization of the evidence in the Record, raises arguments that are inconsistent with the Court's remand instructions, and is not supported by substantial evidence.

The conclusions its reaches are arbitrary and capricious. USCIS, through the AAO, has demonstrated that it will not follow a Court mandate or remand instructions from the D.C. Circuit. Relief for Fogo as specified further herein is therefore appropriate.

83.     If this Court allows the Government's course of conduct to continue, Fogo's ability to convey an authentic gaucho experience to its U.S. customers will be materially diminished. This could jeopardize the company's competitive advantage in the United States. Ironically, at issue are just several dozen foreign national positions—upon which the ***hundreds*** of American jobs at Fogo directly depend. For these reasons, Fogo respectfully requests that this Court instruct the agency to grant the Gasparetto petition.

## EXHAUSTION

84.     The AAO is the final level of administrative appellate review available to a petitioner. AAO Decision #2 is, without a doubt, "final agency action," and thus this case is poised for judicial review.

85.     Further, USCIS determined that the AAO proceeding that resulted in AAO Decision #2 was the appropriate means for Defendants to comply with the Court's mandate. As such, Fogo has exhausted its administrative remedies and AAO Decision #2 is ripe for judicial review.

## INJURY

86.     The Government's wrongful denial of the Gasparetto petition has caused and will continue to cause Fogo great financial harm, including:

- Loss of qualified *churrasqueiros* slated to join Fogo's busy restaurants in Kansas City, Missouri, Austin, Texas, and Denver, Colorado, who would be otherwise available to train the locally-hired U.S. *churrasqueiros* in those restaurants*;*

- Diluted authenticity of experience for Fogo's Kansas City, Austin, and Denver restaurant patrons; and

- Loss of market place advantage against competing *churrascarias*.

87.     The Government's unlawful practice, if allowed to continue, will diminish Fogo's ability to expand into additional U.S. markets and could significantly harm Fogo's U.S. business—and along with it, the countless present and potential future U.S. jobs previously made possible by Fogo's previous access to a small number of uniquely talented foreign nationals.

### CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION—DEPRIVATION AND VIOLATION OF RIGHTS UNDER THE INA

88.     In denying Fogo's petitions on behalf of Mr. Gasparetto, the Government unlawfully interpreted and applied the term "specialized knowledge" under 8 U.S.C. § 1101 (a)(15)(L), including through the improper disregard of certain evidence and the imposition of an impermissibly high burden of proof on Fogo.  *Matter of Pazandeh*, 19 I&N Dec. 884 (BIA 1989).

89.     As a result, the Government deprived Fogo of its rights under the INA to benefit from the statute's intracompany transferee provisions, and thereby violated those rights.  8 U.S.C. § 1101 (a)(15)(L).

### SECOND CAUSE OF ACTION—VIOLATIONS OF APA

90.     The Government's denial of Fogo's petition on behalf of Mr. Gasparetto is improper and reviewable under the APA.  5 U.S.C. § 702.

91.     As a result of these improper decisions by the Government, Fogo is "suffering a legal wrong of agency action" and is "adversely affected or aggrieved by agency action," and therefore "is entitled to judicial review thereof."  5 U.S.C. §702.

92.     The Government's decision to deny Fogo's L-1B visa petition for Mr. Gasparetto was based upon an interpretation contrary to and inconsistent with 8 U.S.C. § 1101 (a)(15)(L) and 8 C.F.R. 214.2(l)(1)(ii)(D).

93.     The Government's decision to deny Fogo's petition on behalf of Mr. Gasparetto—particularly in light of a record providing ample evidence of the "specialized knowledge" capacity of his employment—was "arbitrary, capricious, an abuse of discretion, [and] otherwise not in accordance with law." 5 U.S.C. §706(2)(A).  Although Mr. Gasparetto's petition is, in all material respects, indistinguishable from the vast number of petitions which the Government previously approved, the Government has failed to adequately explain this dramatic change in its adjudication of these petitions.

94.     The APA directs that the "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A).  The volume and quality of the evidence which Fogo supplied substantiating the "specialized knowledge" requirement—indicate an entirely different factual setting and compel an opposite result of that reached in *Boi Na Braza Atlanta, LLC v. Upchurch*, No. 3:04-CV-20007-L, 2005 U.S. Dist. LEXIS 21323 (N.D. Tex. Sept. 27, 2005); *aff'd*, 2004 U.S. App. LEXIS 21466 (5th Cir.  Aug. 22, 2006).

95.     The Government breached its duty to take into account fully Fogo's evidence supporting the employment of Mr. Gasparetto in a "specialized knowledge" capacity.  The APA directs that the "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law."   5 U.S.C. §706(2)(D).

96.     The Government's conclusions with respect to the Gasparetto petition for an L-1B visa are unsupported by substantial evidence as required by the APA.  5 U.S.C. § 706(2)(E).

97.     The Government breached its duty owed to Fogo to properly adjudicate Mr. Gasparetto's petition for an L-1B visa.  The Government's five-year delay in granting Mr. Gasparetto's petition is unreasonable.  The APA directs that the "reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

98.     The Government failed to comply with this Court's order of January 21, 2015 in the first District Court case remanding the case to the Department of Homeland Security for "further proceedings consistent with the District of Columbia Circuit's October 21, 2014 Opinion." Because AAO Decision #2 complied with neither this Court's order nor the District of Columbia Circuit's opinion, it was "not in accordance with law" in violation of the APA.  5 U.S.C. § 706(2)(A).

### THIRD CAUSE OF ACTION—MANDAMUS ACT

99.     The failure of the Government to take into account the evidence supporting Fogo's petition—in particular, the ample evidence of Mr. Gasparetto's employment in a "specialized knowledge" capacity—and the resultant denial of that petition, constitutes a violation of a duty owed to Fogo.  See 8 U.S.C. 1101(a)(15)(L); 8 C.F.R. 103.2(b)(8)(i) ("If the evidence submitted with the application or petition establishes eligibility, USCIS **will approve** the application or petition . . . .") (emphasis added).

100.    The Court therefore has authority under the Mandamus Act, 28 USC § 1361, to compel the Government to grant the Gasparetto petition—consistent with the duties owed to Fogo.

## FOURTH CAUSE OF ACTION—DECLARATORY JUDGMENT ACT

101.    Fogo is entitled to a declaration of its rights, which shall have the force and effect of a

final judgment, in accordance with 28 U.S.C. § 2201(a).

**PRAYER FOR RELIEF**

Fogo hereby prays for relief as follows:

1.      That the Court hold unlawful and set aside the USCIS findings that the evidence fails to establish that Mr. Gasparetto has been and will be employed in a "specialized knowledge" capacity;

2.      That the Court hold unlawful and set aside the USCIS decisions denying Fogo's petition on behalf of Mr. Gasparetto as not in accordance with law;

3.      That the Court declare that Fogo has submitted sufficient evidence to establish that Mr. Gasparetto has been and will be employed in a "specialized knowledge" capacity, as set forth in INA Section 101(a)(15)(L), at 8 U.S.C. § 1101 (a)(15)(L);

4.      That the Court compel the Government to perform its duty owed to Fogo by instructing USCIS to approve Fogo's L-1B visa petition filed on behalf of Mr. Rones Gasparetto; and

6.      That the Court provide further relief as it deems appropriate, just, and equitable.

DATED August  7, 2015                                    Respectfully submitted,


/s/ Carl W. Hampe

Carl W. Hampe (DC Bar # 440475)
Daniel P. Pierce (DC Bar# 988836)

Fragomen, Del Rey, Bernsen & Loewy LLP
1101 15th St. NW Suite 700
Washington, DC  20005
Phone  (202) 223-5515
Fax  (202) 371-2898
champe@fragomen.com
dpierce@fragomen.com
Attorneys for Plaintiff