UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
FOGO DE CHAO (HOLDINGS), INC.,     )
                                   )
            Plaintiff,             )
                                   )
       v.                          )   Civil Action No. 15-1272 (RBW)
                                   )
U.S. DEPARTMENT OF                 )
HOMELAND SECURITY, et al.,         )
                                   )
            Defendants.            )
_____)

# MEMORANDUM OPINION

The plaintiff, Fogo De Chao (Holdings), Inc. ("Fogo" or the "petitioner"), which operates Brazilian-style steakhouses known as churrascarias, seeks judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706 (2012), of the defendants' denial of a non-immigrant, "L-1B" work visa to transfer the proposed beneficiary of the visa from Fogo's Brazilian subsidiary to the position of a churrasqueiro chef in the petitioner's United States locations. See generally Compl. Currently pending before the Court are the parties' cross-motions for summary judgment, see generally Plaintiff's Motion for Summary Judgment ("Pl.'s Mot."); Defendants' Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment ("Defs.' Mot."), which present essentially two questions: (1) whether the position that the intended L1-B beneficiary would occupy "involves specialized knowledge;" and (2) whether the evidence on the record is sufficient to establish that the proposed beneficiary possesses such "specialized knowledge" as required under the applicable regulatory scheme discussed herein. See generally Plaintiff's Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("Pl.'s Mem.") at 17–26. Upon

consideration of the parties' submissions, the Court will grant in part and deny in part both parties' motions.[1]

## I. BACKGROUND

The lengthy procedural and factual background underlying Fogo's extended effort to obtain a non-immigrant work visa for Rones Gasparetto ("Gasparetto") is detailed in the District of Columbia Circuit's opinion in Fogo de Chao (Holdings), Inc. v. U.S. Dep't of Homeland Security, 769 F.3d 1127, 1132–35 (D.C. Cir. 2014), and the Court will not reiterate every detail of that history here.  But a brief recitation of the relevant regulatory and procedural background is helpful to frame the Court's analysis of the motions currently before the Court.

### A. Statutory and Regulatory Background

The Immigration and Nationality Act (the "Act") "create[d] a nonimmigrant visa program for qualifying employees of multinational companies that are being transferred to the United States."  Fogo de Chao (Holdings), 769 F.3d at 1130 (citing 8 U.S.C. §§ 1101 et seq.). The Act authorizes the issuance of a visa to

> an alien who, within [three] years preceding the time of his application for admission into the United States, has been employed continuously for one year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and who seeks to enter the United States temporarily in order to continue to render his services to the same employer or a subsidiary or affiliate thereof in a capacity that is managerial, executive, or involves specialized knowledge . . . .

8 U.S.C. § 1101(a)(15)(L).  "A visa granted to an employee whose work entails specialized knowledge is commonly referred to as an L-1B visa . . . ."  Fogo de Chao (Holdings), 769 F.3d at

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Points and Authorities in Support of Defendants' Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment ("Defs.' Mem."); (2) the Plaintiff's Reply to Defendant[s'] Opposition to Plaintiff's Motion for Summary Judgment and Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Reply"); (3) the Defendants' Reply in Support of Defendants' Cross-Motion for Summary Judgment ("Defs.' Reply"); and (4) the Administrative Record Excerpts ("A.R.") provided by the parties pursuant to Local Rule 7(n), which consist of three parts: A.R.1, A.R.2, and A.R.3.

1130.  The Act itself does not define what amounts to "specialized knowledge," id., but the United States Citizenship and Immigration Services (the "Service") promulgated a regulation defining the term as

> special knowledge possessed by an individual of the petitioning organization's product, service, research, equipment, techniques, management, or other interests and its application in international markets, or an advanced level of knowledge or expertise in the organization's processes and procedures.

8 C.F.R. § 214.2(*l*)(1)(ii)(D).  Accordingly, an employer seeking a "specialized knowledge" or L-1B visa must submit, in addition to other requirements,

> (ii) [e]vidence that the alien will be employed in an executive, managerial, or specialized knowledge capacity, including a detailed description of the services to be performed[;]
>
> (iii) [e]vidence that the alien has at least one continuous year of full-time employment abroad with a qualifying organization within the three years preceding the filing of the petition[; and]
>
> (iv) [e]vidence that the alien's prior year of employment abroad was in a position that was managerial, executive, or involved specialized knowledge and that the alien's prior education, training, and employment qualifies him/her to perform the intended services in the United States; however, the work in the United States need not be the same work which the alien performed abroad.

Id. § 214.2(*l*)(3).

In addition to relying on the regulatory provisions above, the defendants also rely on the following two internal agency memoranda when interpreting the term "specialized knowledge."  See Fogo de Chao (Holdings), 769 F.3d at 1131.  The 1994 agency memorandum authored by James A. Puleo states that the indicators of "specialized knowledge" may include "knowledge that is valuable to the employer's competitiveness in the market place," "knowledge which, normally, can be gained only through prior experience with that employer," or "knowledge of a product or process which cannot be easily transferred or taught to another individual."  James A. Puleo, Interpretation of Special Knowledge (Mar. 9, 1994) ("Puleo Mem.") at 2.  And a 2004

agency memorandum specifically addresses "specialty cooks seeking L-1B status," stating that "[c]hefs or [s]pecialty cooks generally are not considered to have 'specialized knowledge' for L-1B purposes, even though they may have knowledge of a restaurant's special recipe or food preparation technique," but sets forth several factors, none of which are "necessarily controlling," that adjudicators may consider when assessing whether a proposed beneficiary possesses the requisite "specialized knowledge." Fujie O. Ohata, Interpretation of Specialized Knowledge for Chefs and Specialty Cooks seeking L-1B status (Sept. 9, 2004) ("Ohata Mem.") at 1, 2.

### B. Procedural Background

The defendants are: (1) the United States Department of Homeland Security (the "Department"); (2) Jeh Johnson, Secretary of the Department (the "Secretary"); (3) the Service, a component within the Department; (4) Leon Rodriguez, Director of the Service (the "Director"); and (5) Ronald Rosenberg, Director of the Service's Administrative Appeals Office (the "Appeals Office Director"). Compl. at 1. Fogo is a Delaware corporation, id. ¶ 15, that operates "upscale churrascarias in ten locations in Brazil, one location in Mexico, and [in twenty-six] cities throughout the [United States]—including one in Washington, [D.C.]," id. ¶ 25. Fogo filed a petition for an L-1B non-immigrant, business visa on behalf of Gasparetto, an individual alleged to be a gaucho chef or churrasqueiro, id. ¶ 40, to allow Gasparetto to transfer from one of Fogo's restaurants in Brazil to one of Fogo's United States locations. Compl. ¶ 2. The defendants, through the Service, have twice denied the Gasparetto petition. See id. ¶ 3. This Court previously affirmed the defendants' initial denial of the Gasparetto petition. Fogo de Chao Churrascaria, LLC v. U.S. Dep't of Homeland Sec., 959 F. Supp. 2d 32, 51–52 (D.D.C. 2013) (Walton, J.). On appeal, however, the Circuit reversed the Court's prior disposition of the case

4

and remanded the Gasparetto petition for further agency proceedings. Fogo de Chao (Holdings), 769 F.3d at 1152. In significant part, the Circuit rejected the defendants' blanket refusal to consider "cultural knowledge" as part of its analysis of whether Gasparetto possessed the required "specialized knowledge" to qualify him for an L-1B visa. 769 F.3d at 1139–42. The Circuit also concluded that the "Appeals Office's finding that there was insufficient evidence of Gasparetto's completion of the company's internal . . . churrasqueiro training program, which is a prerequisite before an employee may be considered for transfer to the United States" was "not supported by substantial evidence." Id. at 1146.

Notwithstanding the Circuit's opinion, on remand, the defendants again denied the Gasparetto petition in a June 2015 decision issued by the Appeals Office. A.R.3 at 29. Fogo then initiated this second suit seeking further review of the Appeals Office's determination.

## II.   STANDARD OF REVIEW

In a case involving review of final administrative action upon a motion for summary judgment, the usual standard of review set forth in Federal Rule of Civil Procedure 56 does not apply. E.g., Se. Conference v. Vilsack, 684 F. Supp. 2d 135, 142 (D.D.C. 2010). Rather, a court must "decid[e], as a matter of law, whether an agency action is supported by the administrative record and [is] consistent with the . . . [arbitrary and capricious] standard of review [under the APA]." Loma Linda Univ. Med. Ctr. v. Sebelius, 684 F. Supp. 2d 42, 52 (D.D.C. 2010) (citing Stuttering Found. of Am. v. Springer, 498 F. Supp. 2d 203, 207 (D.D.C. 2007)), aff'd, 408 F. App'x 383 (D.C. Cir. 2010); see also Richards v. INS, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977).

"Arbitrary and capricious" review is "highly deferential" and "presumes the agency's action to be valid." Envt'l. Def. Fund, Inc. v. Costle, 657 F.2d 275, 283 (D.C. Cir. 1981). "The

scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). Rather, "court[s] consider[] whether the agency acted within the scope of its legal authority, whether the agency has explained its decision, whether the facts on which the agency purports to have relied have some basis in the record, and whether the agency considered the relevant factors." Fund for Animals v. Babbitt, 903 F. Supp. 96, 105 (D.D.C. 1995) (citing Marsh v. Or. Natural Res. Council, 490 U.S. 360, 378 (1989)). Courts "will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Pub. Citizen, Inc. v. FAA, 988 F.2d 186, 197 (D.C. Cir. 1993) (internal quotation marks omitted). In sum, "when a party seeks review of agency action under the APA, the district [court] sits as an appellate tribunal," and "[t]he 'entire case' on review is a question of law." Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001).

### III. ANALYSIS

#### A. The Scope of the Circuit's Remand of the Defendants' Initial Denial

As a threshold matter, the parties disagree on the scope of the Circuit's remand. Fogo contends that the Circuit remanded a "sole open issue" for reconsideration, specifically, whether Fogo had adduced sufficient evidence to show that its gaucho churrasqueiros were different from its local (i.e., United States) hires to support a finding of significant economic inconvenience should Fogo be barred from transferring Gasparetto. See Pl.'s Mem. at 12 (asserting that only this question was "properly back before the [Appeals Office] on remand"). Fogo challenges the following three conclusions reached by the Appeals Office as being beyond the scope of the Circuit's instructions on remand: (1) that "Fogo's gaucho chefs are no different from its competitor's chefs"; (2) that Gasparetto had not gained "specialized knowledge in part through

6

the completion of Fogo's extensive in-house training program"; and relatedly, (3) that Gasparetto had not been employed as a churrasqueiro in Brazil. Id. The defendants, on the other hand, assert that the Circuit's instructions did not constitute a remand with specific instructions, but instead imposed the "ordinary remand rule," sending the matter back to the Service for a broad reconsideration of the Gasparetto petition. See Defs.' Mem. at 8–9.

The Court's review of the Circuit's opinion supports the defendants' position. The main thrust of the Circuit's opinion is its rejection of the defendants' categorical exclusion of cultural knowledge as a component of "specialized knowledge." Fogo de Chao (Holdings), 769 F.3d at 1139–42. On this score, the Circuit stated that "this aspect of [the Service's] decision . . . lack[ed] the power to persuade under Skidmore[ v. Swift & Co., 323 U.S. 134 (1944),] and, in light of the resulting failure to address otherwise relevant evidence, the decision before us does not appear to have been 'based on a consideration of the relevant factors.'" Id. at 1141 (emphasis added) (quoting Judulang v. Holder, 565 U.S. 42, 52 (2011)). But the Circuit "h[eld] only that . . . [it could] not sustain the Appeals' Office's decision on the given rationale that cultural knowledge is categorically irrelevant to 'specialized knowledge' without a more reasoned explanation from the agency." Id. at 1142. The Circuit then stated that, when considering whether the churrasquerio position required "specialized knowledge," as indicated by the economic burden imposed by attempting to transfer the skills possessed by gaucho churrasquerios to local hires, "[t]he Service nevertheless retains substantial discretion in considering this question anew on remand." Id. (emphasis added).

Regarding the defendants' factual conclusion that the record lacked sufficient evidence that Gasparetto had completed Fogo's internal training program in Brazil and been promoted to the position of churrasqueiro, the Circuit determined that "this conclusion [was] not supported by

7

substantial evidence" because the defendants had failed to consider three "uncontradicted" items of evidence "documenting Gasparetto's completed training." Id. at 1147 (identifying "(i) a sworn affidavit submitted by Fogo[s] . . . Chief Executive Officer attesting that Gasparetto had "completed the training program in Brazil," . . . ([ii]) Gasparetto's curriculum vitae stating that he 'graduated and specialized as a 'waiter churrasqueiro" while working at a Fogo de Chao restaurant in Sao Paolo, . . . and ([iii]) the letter from a Brazilian nutritionist concluding, after reviewing Gasparetto's curriculum vitae and information on the churrasqueiro position at Fogo . . . , as well as interviewing Gasparetto, that he had the cultural background and restaurant skills necessary to fill that position"). Notably, the Circuit then observed that "[w]hile the substantial-evidence standard of review is generous, . . . it does not allow an agency to close its eyes to on-point record evidence without any explanation at all." Id. (emphasis added). And in determining what relief Fogo was entitled to, the Circuit referenced the defendants' "blinkered review of the evidence of Gasparetto's training" as an error that would be best resolved by "remand[ing] to the agency for additional investigation or explanation." Id. (emphasis added) (quoting Florida Power & Light Co. v. Lorion, 470 U.S. 729 744 (1985)); see also id. (Fogo . . . has [not] demonstrated that this case warrants a remand to the agency with specific instructions.").

The Circuit thus required the defendants to: (1) reassess the issue of what constitutes "specialized knowledge" without imposing a categorical exclusion of cultural knowledge as a factor, and (2) properly address the proffered evidence of Gasparetto's training, which they had previously failed to do. The Court therefore rejects Fogo's arguments that the Circuit only remanded a "sole issue" for reconsideration.

### B. Whether Fogo's Gaucho <u>Churrasqueiro</u> Position Involves Specialized Knowledge

The governing statute requires an L-1B beneficiary to work for the petitioning employer "in a capacity that . . . <u>involves specialized knowledge</u>." 8 U.S.C. § 1101(a)(15) (emphasis added). Notwithstanding the defendants' inclusion of gaucho <u>churrasqueiros</u>' cultural knowledge as a factor in its specialized knowledge analysis on remand, the defendants nonetheless reaffirmed their prior finding that "the evidence as a whole was insufficient to establish [Fogo's] claim . . . that the petitioner's <u>churrasqueiro</u> chefs in general[] possess skills and knowledge different from that generally possessed by <u>churrasqueiro</u> chefs working in other Brazilian-style <u>churrascarias</u> in the United States and Brazil.") A.R.3. at 8 n.8. Additionally, the defendants also rejected other evidence submitted by Fogo that distinguished its gaucho <u>churrasqueiros</u> from its locally-hired chefs. <u>See</u> A.R.3 at 13–18.

An agency's factual conclusions are reviewed under the substantial evidence standard and may only be overturned where they are "unsupported by substantial evidence in a case . . . reviewed on the record of an agency hearing provided by statute." 5 U.S.C. § 706(2)(E); <u>see also</u> <u>Citizens to Preserve Overton Park v. Volpe</u>, 401 U.S. 402, 414 (1971) ("In certain narrow, specifically limited situations, the agency action is to be set aside if the action was not supported by 'substantial evidence.'"). The Supreme Court has "defined 'substantial evidence' as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 619–20 (1966) (quoting <u>Consol. Edison Co. of New York v. NLRB</u>, 305 U.S. 197, 229 (1938)). Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." <u>Id.</u> at 620. In applying the substantial evidence standard,

9

the reviewing court may not "displace . . . [a] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951). While the Court is mindful of this deferential standard, the Court concludes that the record is more than "adequate to support a conclusion" that Fogo's gaucho churrasqueiro position involves specialized knowledge of Fogo's product and its application in the U.S. market. See 8 C.F.R. § 214.2(*l*)(1)(ii)(D).

Fogo provided principally three documents to support its assertion that its gaucho churrasqueiros are intended to occupy a position that involves "specialized knowledge." First, Fogo's Chief Executive Officer, Lawrence J. Johnson ("Johnson"), submitted a sworn affidavit describing, inter alia, Fogo's business model and how its gaucho churrasqueiros factor into that model. A.R.1 at 79–88. In his affidavit, Johnson attests that Fogo "authentically conveys the cooking and lifestyle of the gauchos of the rural pampas region of Southern Brazil, principally through churrasco—the traditional Brazilian gaucho way of cooking, presenting, and serving meat—which originated in the Rio Grande do Sul region." A.R.1 at 79. According to Johnson, "Fogo remains authentic by employing, at each [United States] restaurant, approximately three to five genuine Brazilian gaucho chefs (known as churrasqueiro), who grew up as gauchos in the rural pampas region of Southern Brazil." Id. at 80. Hew further noted that, "[f]ollowing training and at least two years['] experience in Fogo's Brazilian restaurants, Fogo selects the best of these gauchos for transfer to Fogo's [United States] restaurants." Id. He also indicated that "[n]ot only do the gaucho churrasqueiros cook, serve, and present the churrasco in Fogo's United States restaurants alongside locally-hired chefs, but that they also help to train those locally-hired chefs. Id. at 81–82. Johnson further explained the difficulties Fogo encounters training locally-hired

10

chefs to perform several of the skills gaucho churrasquerios can perform "to 100% specification." Id. at 81–85.

Second, Fogo submitted a report drafted by Gerald A. Hornbeck, a restaurant-industry consultant. See id. at 89–97. Following interviews with various Fogo personnel (including both Brazilian and locally-hired Fogo chefs), observations of Fogo's restaurant operations, and observations of other Brazilian-style steakhouses, id. at 90, Hornbeck concluded that Fogo's gaucho churrasqueiros, who possess "inherent, personal knowledge of the gaucho lifestyle," undergo a "rigorous and continuous training program" that entails a "minimum of two years to be certified or promoted to the churrasqueiro chef position," id. at 94. This training program is "dependent on experienced, veteran Brazilian churrasqueiro chefs" who pass their knowledge and skills "personally" and "one on one" to trainees. Id. at 95. Hornbeck also reported that Fogo's "training of its locally hired chefs is intense and exacting," and that only one in ten of its local hires proceed past the initial training program. Id.

Third, the record contains a report by Gregory P. Fatigati, an associate dean for culinary arts at the Culinary Institute of America, who was engaged to "review the [churrasqueiro] position and specialized knowledge training of Fogo de Chao's 'Churrasqueiros,' and compare this position to our U.S. culinary education model for similarities and/or differences." Id. at 98. Based on conversations with various Fogo personnel (including Fogo churrasqueiros and meat service manager), observations of Fogo's restaurant operations, and his review of Fogo's training materials, Fatigati concluded that Fogo's meat preparation techniques are unique in the United States primarily due to the high-heat, open-flame grilling technique, coupled with the

11

requirement that a churrasqueiro determine the temperature of meat by sight alone, as opposed to through the use of a thermometer.  Id. at 100–01.[2]

The defendants' analysis of this evidence began with characterizing it as being in "tension" with Fogo's initial submissions.  A.R.3 at 13; see also id. at 15 (making reference to Fogo's purportedly "evolving assertions").  And ultimately, the Appeals Office concluded that "it remains unclear what special or advanced knowledge . . . the U.S. position requires, that cannot be taught or imparted to others within a reasonable amount of time."  Id. at 15.  Having reached this conclusion, the defendants state that Fogo's written evidence of its training program "has not adequately shown what the training entails or the knowledge acquired as a result."  Id. at 16.  But this conclusion ignores Hornbeck's observation that although these materials were "surprisingly simple and elementary," Fogo's written training materials do not reflect the reality of Fogo's training.  A.R.1 at 95 (stating that "the essence of churrasqueiro specialty chef training is passed on personally . . . one on one, verbally, and physically" from "Brazilian trained churrasqueiro chefs" to trainees).  Hornbeck characterized the training as "hands on, on the job" training that comprises "nearly 100% of the total training effort, and is dependent on experienced, veteran Brazilian churrasqueiro chefs to pass on their trade to others."  Id.  Despite this evidence, the Appeals Office's decision focuses entirely on Fogo's written training materials and disregards this "on the job" aspect of Fogo's training program.  See A.R.3 at 15–16.

More importantly, in addition to the infirmities discussed above, the defendants focus on the potential for local hires to successfully learn how to prepare and present churrasco in a Fogo

---

[2] In addition to the Johnson affidavit and the Hornbeck and Fatigati letters, the record contains a letter from Regina Blau, who was "responsible for the [human resources] department at Fogo de Chao in Brazil."  A.R.1 at 167.  Her letter detailed Fogo's selection process for its gaucho churrasqueiros in Brazil, id. at 168–69, and Fogo's training program, id. at 170.  The training program begins with a ninety-day probationary period, followed by churrasqueiro training which "lasts anywhere from eighteen- to twenty-four months, based on the learning capacity of each trainee."  Id.

restaurant, which Fogo challenges as an impermissible resurrection of the "labor market test," Pl.'s Mem. at 17, and the Court agrees that the Appeals Office's decision is an improper application of that test. While the record does contain evidence that local hires can learn, over time, churrasqueiro skills, see A.R.3 at 17, there is also evidence that Fogo relies heavily on its gaucho churrasqueiros to transfer this knowledge and skills to local hires, see A.R.1 at 95 (Hornbeck's description of "one on one," "on the job" training by Brazilian churrasqueiros); id. at 100 (Fatigati's observation that "[i]t is the months of repetition in Fogo de Chao's Churrasqueiro training program in Brazil that develops their speed and accuracy that is required" to maintain Fogo's restaurant quality), and that Fogo's business model is predicated on ensuring an authentic, not imitation, culinary experience, id. at 80 (Johnson's attestation that "Fogo's strict adherence to an authentic gaucho cultural and culinary experience has enabled it to achieve [its] economic success" and that Fogo's "commitment to authenticity distinguishes Fogo from competing churrascarias"). The Appeals Office disregarded this evidence and instead concluded that the gaucho churrasqueiros' knowledge must be merely generalized knowledge because a local hire can be trained to perform these tasks. A.R.3 at 17 ("Locally-hired workers in the petitioning company and in the petitioner's particular industry can and do learn to prepare, cook, and serve churrasco . . . ."). But his conclusion is precisely the type of assessment barred by the rejection of the labor market test, see Puleo Mem. at 2 ("The determination of whether an alien possesses specialized knowledge does not involve a test of the United States labor market. Whether or not there are United States workers available to perform the duties in the United States is not a relevant factor since the test for specialized knowledge involves only an examination of the knowledge possessed by the alien, not whether there are similarly employed United States workers."), and must therefore be set aside.

The Court finds that the Appeals Office's assessment of the facts proffered regarding the gaucho <u>churrasqueiro</u> position improperly disregarded substantial evidence. The Court's review of the record indicates that the evidence proffered by Fogo is adequate to conclude that the gaucho <u>churrasqueiro</u> position at Fogo, which Fogo reserves for transferees from its Brazilian locations, does involve specialized knowledge, and the Court will therefore set aside the defendants' finding to the contrary.

### C. Whether Gasparetto's Is Qualified for the Intended <u>Churrasqueiro</u> Position

The Service's regulations require a petitioner to establish, among other requirements, that the proposed beneficiary of an L-1B visa "has at least one continuous year of full-time employment abroad with a qualifying organization within the three years preceding the filing of the petition," "that the alien's prior year of employment abroad was in a position that was managerial, executive, or involved specialized knowledge[,] and that the alien's prior education, training, and employment qualifies him/her to perform the intended services in the United States . . . ." 8 C.F.R. § 214.2(*l*)(3)(iii), (iv). The Circuit's opinion concluded that the Appeals Office failed to adequately explain its conclusion that Fogo's evidence was insufficient to establish that Gasparetto was qualified for the intended position at one of Fogo's United States Restaurants. <u>Fogo de Chao (Holdings)</u>, 769 F.3d at 1146–47 (discussing the Appeals' Office's prior findings regarding the proof of Gasparetto training and work experience in Brazil and concluding that the Appeals Office failed to address certain evidence). On remand, the Appeals Office concluded that while the evidence referenced by the Circuit regarding Gasparetto's training and work experience may have been contradicted, it was nonetheless uncorroborated and had limited probative value. A.R.3 at 22–24.

Upon a review of the record, the Court agrees with the Appeals Office that the record is ambiguous at best regarding when Gasparetto actually entered and completed Fogo's eighteen- to twenty-four month training program in Brazil.  The Appeals Office applied the "preponderance of the evidence" standard used in visa petition proceedings.  A.R.3 at 22; see also id. ("The preponderance of the evidence' standard requires that the evidence demonstrate that the petitioner's claim is 'probably true' where the determination of truth is made based on the factual circumstances of each individual case.").  Fogo submitted copies of Gasparetto's monthly payroll statements for the one-year period prior to the filing of the L-1B petition, but these paychecks reflected Gasparetto's position as a "garcon churras"—a position Fogo has not asserted "involved specialized knowledge"—and not as a "churrasqueiro chef" or some other position "involv[ing] specialized knowledge."  See A.R.3 at 20 ("[T]he petitioner did not reconcile the incongruous job titles.  Without clarification, we were unable to determine whether the garcon churras position identified on the beneficiary's payroll statements is a lower-level position or whether it is equivalent to the churrasqueiro position."); see also A.R.3 at 400–11 (payroll statements indicating that Gasperetto's position in 2009 was as a "garcon churras").  In addition, the Appeals Office concluded that Fogo had failed "to specify the dates or duration of [Gasparetto's] training or indicate when he was promoted to the churrasqueiro chef position," A.R.3 at 30, and the Court's review of the record confirms it lacks details of the timing and duration of Gasparetto's training, which are required to determine whether Gasparetto was in fact qualified for the churrasqueiro chef position.  The Court will therefore affirm the Appeals Office's conclusion that Fogo failed to prove by a preponderance of the evidence that Gasparetto possesses the required qualifications for the intended churrasqueiro position.

## IV.     CONCLUSION

For the foregoing reasons, the Court vacates the Appeals Office's finding that Fogo's gaucho <u>churrasqueiro</u> position does not involve specialized knowledge, but affirms the Appeals Office's findings regarding Gasparetto's training and qualifications.  Accordingly, the Court will grant in part and deny in part both motions for summary judgment.

**SO ORDERED** this 26th day of September, 2016.[3]

REGGIE B. WALTON<br>United States District Judge

---

[3] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.